## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

LAURA A. HEIMLICHER and )
LAWRENCE W. HEIMLICHER, )
Individually, and as Administrators )
of the Estate of Cole C. Heimlicher )    CASE NO.  C05-4054-DEO
deceased, )
                      )
     Plaintiffs, )
                      )
v. )
                      )    COMPLAINT and
JAMES O. STEELE, M.D., )    JURY DEMAND
DICKINSON COUNTY MEMORIAL )
HOSPITAL, an IOWA non-profit )
corporation, d/b/a LAKES REGIONAL )
HEALTHCARE, )
                      )
     Defendants. )

## STATEMENT REGARDING JURISDICTION

Jurisdiction in this case is based upon a FEDERAL STATUTE arising under 42 U.S.C.

§1395dd. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and

costs and is in regard to the transfer of a patient from one hospital to another prior to

stabilization.

## COUNT I:

## MEDICAL NEGLIGENCE - WRONGFUL DEATH

**Plaintiffs Laura A. Heimlicher and Lawrence W. Heimlicher state**:

1.     They are residents of the City of Spirit Lake, County of Dickinson, State of Iowa.

2.     They are the parents of Cole Christopher Heimlicher, deceased, and are the co-

administrators of his Estate.

3.    At all times material, Defendant James O. Steele, M.D. ("Dr. Steele"), was a licensed and practicing physician, specializing in Emergency Medicine, and at all times pertinent hereto provided medical services in the City of Spirit Lake, County of Dickinson, State of Iowa, and was an agent, actual and/or ostensible, servant, and/or employee of defendant Lakes Regional Healthcare.

4.    At all times material, Defendant Dickinson County Memorial Hospital, d/b/a Lakes Regional Healthcare ("LRH") was an Iowa Corporation and health care facility doing business in the City of Spirit Lake, County of Dickinson, State of Iowa.

5.    On February 11, 2004, Mrs. Heimlicher, approximately 8 months pregnant, began to experience a large amount of vaginal bleeding. She became concerned and called 911 at approximately 1945, and an ambulance was dispatched.

6.    Approximately fifteen minutes later, her water broke and she continued to bleed. The head EMT arrived at 2005 and stated that they were waiting on an ambulance. Mrs. Heimlicher told the head EMT that her abdomen hurt around her belly button and her pain was less severe if she was standing. The EMT repeatedly insisted that she sit down.

7.    The ambulance arrived and Mrs. Heimlicher told the two EMTs that she was ready to go and attempted to go out the front door, because she didn't want her children to be upset. The EMTs insisted that she go via cot and refused to allow her to walk out the front door.

8.    The EMTs spent about 10 minutes looking for ways to get the cot out of the house, before finally loading Mrs. Heimlicher into the ambulance. After she was placed in the ambulance, she was unable to straighten her legs due to the pain in her abdomen.

9.    At 2037 Mrs. Heimlicher arrived at the Emergency Department at LRH. Dr. Steele was the only Emergency Department physician working when Mrs. Heimlicher was

admitted. Following her admission, Dr. Steele performed a sterile vaginal exam (SVE) and found her to be 50% effaced with contractions every 2 minutes. Mrs. Heimlicher continued to have vaginal bleeding and extreme pain in the abdominal wall surrounding her belly button. She informed all care givers she was bleeding severely before her water broke.

10.    At 2055 a fetal monitor was applied. Fetal heart tones were in the range of 120's to 130's with good variability. Dr. Steele spoke with Dr. Fiegen regarding management of Mrs. Heimlicher's care. Based on the findings reported by Dr. Steele, Dr. Fiegen recommended two doses of Terbutaline.

11.    At 2125 an ultrasound was performed by Tracy, an ultrasound technician employed by LRH. After the ultrasound was completed, Tracy informed Dr. Steele and the patient that there was no abruption. However, the ultrasound was not read by a radiologist until the following day. Tracy did, however, identify an area of concern on the ultrasound, which she described as "dead placenta" to the patient and Dr. Steele. Tracy assured Mrs. Heimlicher and Dr. Steele that this area was not an abruption, but was simply an area of "abnormality."

12.    Dr. Steele contacted Dr. Fiegen a second time and reported to him that Laura had stabilized from the terbutaline and it is safe to have her transferred to Sioux Valley Hospital, in Sioux Falls, South Dakota. Mrs. Heimlicher continued to complain about the pain around her belly button area, which she wanted to go away. Dr. Steele did not ever manually palpate the area. One nurse asserted that the baby may be face down, which could cause the abnormal pain.

13.    At 2225 Mrs. Heimlicher is returned to the ambulance for the trip to Sioux Falls. Her nurse, Ms. Helle, traveled with her in the ambulance. In route, Mrs. Heimlicher continued to bleed heavily and her pain increased.

14.    At 2250 her contractions were every 1.5 minutes and her pain was rated at 8 on a

scale of 10, with increasing pain when the nurse palpated her lower abdomen. Due to the heavy bloodflow coming from Mrs. Heimlicher, the medical attendants had to change the bloody pads while they were en route to Sioux City.

15. At 2300 fetal heart tones were in the 120's with minimal variability Mrs. Heimlicher's pain was now rated as 9 on a scale of 10. As they were approaching Worthington, MN, Mrs. Heimlicher informed Nurse Helle that she had never felt pain of this magnitude. Mrs. Heimlicher continued to tell them that between contractions it felt like rocks were being jabbed into her stomach. Ms. Helle decided that if Mrs. Heimlicher was further dilated, they would divert the ambulance to the hospital in Worthington, MN. Upon checking for dilation, Ms. Helle decided to pass Worthington, MN and continue on to Sioux Falls, SD.

16. At 2310 Nurse Helle had difficulty monitoring the fetal heart rate, and after several attempts at repositioning the monitor and Mrs. Heimlicher, Nurse Helle was unable to assess fetal heart rate. Nurse Helle attempted to assess fetal heart tones via doppler without success. At 2350 Nurse Helle called Sioux Valley Hospital with a status report. No indication was made to Dr. Fiegen or staff concerning the fetal heart tones reported at 120 to 150 or blood loss from Mrs Heimlicher. The Sioux Valley Hospital was not prepared for any pending emergency based on Nurse Helle's failure to relay critical information en route to Sioux Falls, SD.

17. At 2355, the ambulance arrived at Sioux Valley Hospital in Sioux Falls, South Dakota. An ultrasound was performed immediately after arrival. Dr. Fiegen's notes reflect that Mrs. Heimlicher was in "severe pain and clearly abrupting her placenta or rupturing the uterus". Nurse Helle failed to report Mrs. Heimlicher's massive blood loss en route to Sioux Falls to Dr. Fiegen. Nurse Halle stated "the tech in Spirit Lake, Iowa checked her for abruption ans she is not

abrupted."

18.    Mrs. Heimlicher was immediately taken to the operating room for an emergency cesarean section.  During the surgery, the uterus was found to be infiltrated with blood and clots because the placenta had abrupted. The baby was delivered with Apgar scores of 0 at one minute and 0 at five minutes. Dr. Wellman, a Pediatrician, attended the delivery and attempted resuscitation. After 17 minutes of aggressive resuscitation, the infant was pronounced dead at 0057.

19.    Mrs. Heimlicher became anemic due to the great deal of blood loss. She required blood transfusions to increase her hemoglobin level.

20.    Mrs. Heimlicher now suffers from severe emotion distress, constant anxiety and panic attacks, and traumatic nightmares from the death of her son, Cole Christopher Heimlicher, and the near death of herself.  Mrs. Heimlicher is in constant physical pain due to her diagnosis of fiber myalgia as a result of the trauma.

21.    Dr.  Steele and other employees or agents of LRH were negligent/at fault in the care they provided to Laura Heimlicher while she was a patient there. Specifically, LRH employees or agents were negligent in failing to properly assess her condition, failing to obtain an accurate diagnosis of her condition, including Abruptio Placenta, failing to order appropriate diagnostic tests, failing to properly interpret ultrasound images, failing to administer oxygen therapy, intravenous fluids, and/or blood products to a patient with a large amount of blood loss, and failing to intervene on her behalf in a timely manner to perform an emergent c-section, and avoid transferring her to another facility while she was unstable.  LRH is liable for the negligence/fault of its employees and agents.

22.    As a direct and proximate result of defendants' negligence/fault, Cole Christopher

Heimlicher died. As administrators of the Estate of Cole Christopher Heimlicher, Plaintiffs seek damages for his funeral and burial expenses; unreimbursed medical and hospital expenses, loss of the accumulated value of her estate, pre-death physical and mental pain and suffering, and punitive damages.

FOR THESE REASONS, Plaintiffs Laura A. Heimlicher and Lawrence W. Heimlicher ask for judgment against the Defendants in a fair and reasonable amount as shown by the evidence, together with interest and costs as provided by law.

<u>**COUNT II:**</u>

<u>**EMTALA VIOLATION**</u>

**Plaintiffs Laura A. Heimlicher and Lawrence W. Heimlicher state**:

23.    Paragraphs 1-22 of Count I are incorporated by reference.

24.    Defendant LRH is and was a "participating hospital" as defined in 42 U.S.C.A. §1395dd(e)(2).

25.    Laura A. Heimlicher had an "emergency medical condition" as defined in 42 U.S.C.A. §1395dd(e)(1). Dr. Steele, individually and as an agent of LRH, was aware of Laura Heimlicher's emergency medical condition. Other employees and agents of LRH were aware of Laura Heimlicher's emergency medical condition. This awareness is documented in the "Consent for Transfer" form signed by Dr. Steele and Jennifer Helle.

26.    Despite this knowledge of Mrs. Heimlicher's emergency medical condition, she was not "stabilized" as defined in 42 U.S.C.A. §1395dd(e)(4)(B).

27.    Mrs. Heimlicher was "transferred" from the LRH without being stabilized.

28.    Dr. Steele and LRH violated the federal Emergency Medical Treatment and Active Labor Act ("EMTALA") by recognizing an emergency medical condition and failing to

stabilize Mrs. Heimlicher to the extent that no material deterioration of her condition was likely, within reasonable medical probability, to result from her transfer from the hospital, and by transferring her to another facility without stabilizing her.

29.     As a direct and proximate result of the failure of Dr. Steele and other employees and agents of LRH to stabilize Mrs. Heimlicher's emergency medical condition prior to transfer, Mrs. Heimlicher suffered "personal harm" to herself and her son. That personal harm caused or contributed to the death of Cole Heimlicher.

FOR THESE REASONS, Plaintiffs Laura A. Heimlicher and Lawrence W. Heimlicher ask for judgment against the Defendants for a civil penalty in the amount of $50,000.00 as provided by 42 U.S.C. §1395dd[d][2], in addition to whatever other damages are available under Iowa State Law.

## COUNT III: LOSS OF PARENTAL CONSORTIUM

**Plaintiffs Laura A. Heimlicher and Lawrence W. Heimlicher state**:

30.     Paragraphs 1-22 of Count I are incorporated by reference.

31.     Due to Cole's tragic death, we have been deprived of all the experiences of parenting our long-awaited son.

32.     According to the public policy of the state of Iowa, these invaluable benefits of parenthood have a greater value than the cost of rearing a child, as a matter of law, and include our loss of parental consortium.

FOR THESE REASONS, Plaintiffs, Laura A. Heimlicher and Lawrence W. Heimlicher, seek damages for loss of parental consortium from the Defendants in a fair and reasonable amount as shown by the evidence, together with interest and costs as provided by law.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury on any and all issues related to this case.

DUTTON, BRAUN, STAACK & HELLMAN, P.L.C.

Attorneys for Plaintiff

BY: /s Bruce L. Braley
Bruce L. Braley Iowa Bar #7891
3151 Brockway Road
P.O. Box 810
Waterloo, IA 50704
(319) 234-4471
(319) 234-8029 Fax
E-mail: braleyb@wloolaw.com

McKEEN & ASSOCIATES, P.C.

Attorneys for Plaintiff

BY: /s Brian J. Mckeen
Brian J. McKeen -Michigan Bar# P34123
Co-Counsel for Plaintiffs
645 Griswold St., Suite 4200
Detroit, MI 48226
(313) 961-4400
(313) 961-5985 Fax
E-mail:BJMcKEEN@mckeenassociates.com
