IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| LAURA A. HEIMLICHER and LAWRENCE W. HEIMLICHER, Individually, and as Administrators of the Estate of Cole C. Heimlicher, Deceased, <br><br> Plaintiffs, <br><br> vs. <br><br> JAMES O. STEELE, M.D., and DICKINSON COUNTY MEMORIAL HOSPITAL, an Iowa non-profit corporation, *dba* LAKES REGIONAL HEALTHCARE, <br><br> Defendants. | No. C05-4054-PAZ <br><br> **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS** |

_____

## I. BACKGROUND

This action was commenced by the filing of a Complaint on June 14, 2005. The plaintiffs are Laura A. Heimlicher and Lawrence W. Heimlicher, both individually and as Administrators of the Estate of their deceased infant son, Cole C. Heimlicher. They are residents of Spirit Lake, Dickinson County, Iowa. The defendants are Dickinson County Memorial Hospital, a hospital in Spirit Lake, Dickinson County, Iowa (the "Hospital"); and James O. Steele, M.D., a specialist in emergency medicine employed by the Hospital. Jurisdiction in this court is invoked under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

According to the Complaint, on the evening on February 11, 2004, Laura Heimlicher, who was eight months' pregnant, started to bleed vaginally. She called "911," but before the ambulance could arrive, her water broke. She was taken by ambulance to the Hospital, where she was admitted. She saw Dr. Steele in the Emergency

Department, and told him she had been bleeding severely since before her water broke, and she was suffering from severe pain in the abdominal wall surrounding her belly button.

Dr. Steele performed a vaginal examination, and found Laura Heimlicher's cervix to be 50% effaced. A fetal heart monitor was applied, and fetal heart tones were in the range of 120s to 130s, with good variability. Dr. Steele spoke with Dr. Fiegen, a doctor in Sioux Falls, South Dakota, who recommended administration of a medication. After the medication was administered, an ultrasound was completed by a technician employed by the Hospital. The technician assured Mrs. Heimlicher and Dr. Steele that there was no abruption, although she did identify an abnormality in the placenta. After again consulting with Dr. Fiegen, Dr. Steele decided it was safe to transfer Mr. Heimlicher to Sioux Valley Hospital in Sioux Falls.

At about 10:25 p.m., Mrs. Heimlicher was taken by ambulance to the Sioux Falls, South Dakota, hospital. During the trip, her vaginal bleeding continued and her pain increased. Shortly before midnight, Ms. Heimlicher arrived at Sioux Valley Hospital, where Dr. Fiegen noted she was in "severe pain and clearly abrupting her placenta or rupturing the uterus." She was taken to the operating room, where the baby was stillborn. Mrs. Heimlicher alleges she has suffered serious medical and psychological problems as a result of this incident.

In Count I of the Complaint, the plaintiffs seek to recover damages from the defendants for negligence. In Count II, the plaintiffs allege as follows:

> 24. Defendant [Hospital] is and was a "participating hospital" as defined in 42 U.S.C. § 1395dd(e)(1).
>
> 25. Laura A. Heimlicher had an "emergency medical condition" as defined in 42 U.S.C. § 1395dd(e)(1). Dr. Steele, individually and as an agent of [the Hospital], was aware of Laura Heimlicher's emergency medical condition. Other employees and agents of [the Hospital] were aware of Laura Heimlicher's emergency medical condition. This

> awareness is documented in the "Consent for Transfer" form signed by Dr. Steele and Jennifer Helle.
>
> 26. Despite this knowledge of Mrs. Heimlicher's emergency medical condition, she was not "stabilized" as defined in 42 U.S.C. § 1395dd(e)[3](B).
>
> 27. Mrs. Heimlicher was "transferred" from the [Hospital] without being stabilized.
>
> 28. Dr. Steele and [the Hospital] violated the federal Emergency Medical Treatment and Active Labor Act ("EMTALA") by recognizing an emergency medical condition and failing to stabilize Mrs. Heimlicher to the extent that no material deterioration of her condition was likely, within reasonable medical probability, to result from her transfer from the hospital, and by transferring her to another facility without stabilizing her.
>
> 29. As a direct and proximate result of the failure of Dr. Steele and other employees and agents of [the Hospital] to stabilize Mrs. Heimlicher's emergency medical condition prior to transfer, Mrs. Heimlicher suffered "personal harm" to herself and her son. That personal harm caused or contributed to the death of Cole Heimlicher.
>
> FOR THESE REASONS, Plaintiffs Laura A. Heimlicher and Lawrence W. Heimlicher ask for judgment against the Defendants for a civil penalty in the amount of $50,000.00 as provided by 42 U.S.C. § 1395dd(d)[1], in addition to whatever other damages are available under Iowa State Law.

In Count III, the plaintiffs incorporate previous allegations in the Complaint and ask for parental consortium damages.

On July 18, 2005, Dr. Steele filed a motion to dismiss the Complaint. (Doc. No. 8) The plaintiffs resisted the motion on August 4, 2005. (Doc. No. 9) Dr. Steele filed a reply brief on August 9, 2005. (Doc. No. 10) On June 20, 2006, upon consent of the

parties, this case was reassigned to the undersigned magistrate judge. (*See* Doc. No. 15) The undersigned therefore will address the pending motion to dismiss.

## *II. ANALYSIS*

The Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd (commonly known as the "Anti-Patient Dumping" Act) (the "Act"), was enacted into law in 1985. Section (a) of the Act provides:

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

Section (b) of the Act mandates that a hospital provide necessary stabilizing treatment for an individual who comes to the hospital if the hospital determines the individual has an emergency medical condition.

With respect to a pregnant woman who is having contractions, an "emergency medical condition" is defined in the Act to mean "(i) that there is inadequate time to effect a safe transfer to another hospital before delivery, or (ii) that transfer may pose a threat to the health or safety of the woman or the unborn child." 42 U.S.C. § 1395dd(e)(1)(B). Under subsection (c)(1)(A) of the Act, if an individual has an emergency medical condition which has not been stabilized, the hospital may not transfer the individual unless (i) the individual is informed of the hospital's obligations under the Act and the risk of transfer, and "in writing requests transfer to another medical facility"; or (ii) a physician has signed a certification "that based upon the information available at the time of transfer, the

4

medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweigh the increased risks to the individual and . . . to the unborn child from effecting the transfer." 42 U.S.C. § 1395dd(c)(1)(A).

According to the Complaint, the Hospital is covered by the EMTALA, and the Hospital and Dr. Steele were presented with an "emergency medical condition" when Laura Heimlicher came to the Hospital on February 11, 2004. The plaintiffs allege the defendants were aware of this condition, and "[t]his awareness is documented in the 'Consent for Transfer' form signed by Dr. Steele and [Nurse] Jennifer Helle." The plaintiffs further allege that despite this awareness, the defendants transferred Laura Heimlicher to another hospital even though she was not "stabilized," as defined in 42 U.S.C. § 1395dd(e)(3)(B).[1] The plaintiffs allege that as a direct and proximate result of the defendants' failure to stabilize Mrs. Heimlicher's emergency medical condition prior to transfer, she suffered personal harm, "which caused or contributed to the death of Cole Heimlicher." On their claims under the Act, the plaintiffs ask to be awarded "a civil penalty in the amount of $50,000.00 as provided by 42 U.S.C. § 1395dd(d)[1],[2] in addition to whatever other damages are available under Iowa State Law."

In his motion to dismiss, Dr. Steele argues the plaintiffs' allegations under the EMTALA fail to state a claim upon which relief can be granted against him, and he therefore contends the plaintiffs' claims against him should be dismissed under Federal

---

[1] This subsection defines the term "stabilized" to mean "that no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during the transfer of the individual from a facility."

[2] Subsection (d)(1)(A) provides, "A participating hospital that negligently violates a requirement of this section is subject to a civil money penalty of not more than $50,000 (or not more than $25,000 in the case of a hospital with less than 100 beds) for each such violation. . . ." Subsection (d)(1)(B) provides, "[A]ny physician who is responsible for the examination, treatment, or transfer of an individual in a participating hospital, including a physician on-call for the care of such an individual, and who negligently violates a requirement of this section . . . is subject to a civil money penalty of not more than $50,000 for each such violation . . . ."

5

Rule of Civil Procedure 12(b)(6). He further argues the plaintiffs' state law claims are not within this court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), and those claims should be dismissed as a matter of law under Federal Rule of Civil Procedure 12(b)(1). Finally, he argues the court, as a matter of discretion, should decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c).

## II. DISCUSSION
### A. EMTALA Claims
#### 1. *Claim for damages under the EMTALA*

Dr. Steele argues the plaintiffs' EMTALA damages claim against him should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. He argues the EMTALA does not provide a cause of action for damages against an individual physician, citing *King v. Ahrens*, 16 F.3d 265, 270-71 (8th Cir. 1994).

In *King v. Ahrens*, Mr. King was brought to a clinic with symptoms of a heart attack. A history was taken and he was examined by a doctor, observed, given some tests and medication, and then sent home to bed. Tests were scheduled for a later date. Two days later, King died at home of a myocardial rupture secondary to a heart attack. His wife and children sued the doctors, who were partners in the clinic. The plaintiffs claimed, in part, that the defendants had violated the EMTALA by failing to recognize King's emergency condition and by releasing him before his condition had stabilized. The trial judge granted the physician-defendants' motion for directed verdict on the EMTALA claim, finding the statute applies only to physicians connected with an emergency room, and not to physicians in a private clinic. The plaintiffs appealed.

6

The Eighth Circuit Court of Appeals noted the issue was one of first impression in the circuit as to whether the EMTALA provides a cause of action against a physician working in a private clinic. The court observed that subsection (d)(2)(A) of the Act[3] "creates a private cause of action for personal harm resulting from a violation of [sections (a) or (b) of the Act]." *King*, 16 F.3d at 270-71. After discussing sections (a) and (b), and noting the numerous references to the term "hospital" in those provisions, the court held the Act does not provide for a private cause of action against either a private clinic or a treating physician working at a private clinic. *Id.*

The court in *King* did not directly address the question presented here; that is, whether an individual with an emergency medical condition who comes to a hospital and sees a physician specializing in emergency medicine, and suffers personal harm from a violation of sections (a) or (b) of the Act, has a private cause of action against the physician. The court did note, in *dicta*, the following:

> The plain language indicates that [sub]section (d)(2)(A) creates a cause of action only against a "participating hospital." The statutory definition of "participating hospital" does not encompass an individual physician.

*King*, 16 F.3d at 271. The court also noted:

> Other courts that have considered this Act have found that, even though it provides civil monetary penalties against both the hospital and the physician, it provides a cause of action only against the hospital and not against an individual physician. *See Delaney v. Cade*, 986 F.2d 387, 393-94 (10th Cir. 1993) (holding plain language of Act provides cause of action only against participating hospitals); *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 877-78 (4th Cir. 1992) (Act provides no basis for patient to recover personal injury

---

[3]Subsection (d)(2)(A) provides "Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate." 42 U.S.C. § 1395dd(d)(2)(A).

7

damages from physician); *Gatewood v.* [*Washington Healthcare Corp.*], 933 F.2d [1037,] 1040 n.1 (D.C. Cir. 1991) (no private cause of action against physicians under the Act) (dicta); *Helton v. Phelps County Regional Medical Ctr.*, 817 F. Supp. 789, 790 (E.D. Mo.1 993) (no cause of action for recovery of damages from physician); *Ballachino v. Anders*, 811 F. Supp. 121, 123 (W.D.N.Y. 1993) (same); *Holcomb v. Monahan*, 807 F. Supp. 1526, 1531 (M.D. Ala. 1992) (same); *Jones v. Wake County Hosp. Sys., Inc.*, 786 F.Supp. 538, 545 (E.D.N.C.1991) (same); but cf. *Sorrells v. Babcock*, 733 F. Supp. 1189, 1193-94 (N.D. Ill. 1990) (district court has subject matter jurisdiction over private action against emergency room physician which alleges violations of 42 U.S.C. section 1395dd).

Additionally, there is no basis on which to imply a private cause of action against a physician. A cause of action may be implied in a statute if Congress intended to create a private remedy but did not expressly do so. *See Zajac v. Federal Land Bank of St. Paul*, 909 F.2d 1181, 1182 (8th Cir. 1990) (citing tests announced in *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975)). In this instance, however, Congress expressly created a private remedy which by its plain language is limited to a cause of action against the hospital. The statute itself gives no indication that Congress intended to create any remedy not expressly stated therein. The Fourth Circuit has given this issue a thorough analysis and concluded that neither the plain language nor the legislative history of the Act indicates the existence of a cause of action against a physician. *See Baber*, 977 F.2d at 877-78. The court in *Baber* states that the "legislative history makes it clear that, far from intending to allow patients to sue doctors, Congress intentionally limited patients to suits against hospitals." 977 F.2d at 877. We agree, and we adhere to the general principle that "[when] the plain language of a statute is clear in its context, it is controlling." *Blue Cross Ass'n v. Harris*, 622 F.2d 972, 977 (8th Cir. 1980).

*King*, 16 F.3d at 271.

While these observations might be strongly predictive of what the Eighth Circuit Court of Appeals would say about the question presented in the instant case, they are not binding on this court. "Under the rule of *stare decisis*, the language and general expressions in an opinion should be limited to the particular facts and issues involved and must be construed in light of the issues presented and considered. They should not be extended beyond that for any purpose of authority in another or different case. To be binding as a precedent, there must have been an application of the judicial mind to the precise question necessary to be determined in order to fix the rights of the parties." *Mutual Benefit Health & Accident Ass'n v. Bowman*, 99 F.2d 856, 858 (8th Cir. 1938) (internal citations omitted).

The plaintiffs cite *Sorrells v. Babcock*, 733 F. Supp. 1189 (N.D. Ill. 1990), in support of their resistance to the motion to dismiss. In *Sorrells*, the plaintiff went to a hospital emergency room with an emergency medical condition and was seen by a physician. She alleged she was discharged from the emergency room without stabilization of her symptoms, and, as a result, she suffered severe complications. She brought suit against the emergency room doctors and the hospital. One of the doctors moved to dismiss the EMTALA claim against him, arguing the Act created a private cause of action against hospitals but not physicians. The court denied the motion, holding the Act provided a private remedy against emergency room physicians. *Sorrells*, 733 F. Supp. at 1193. The court supported this holding by citing the legislative history and the language of what is now designated as section 1395(d)(1)(B) of the Act, which provides for civil money penalties against physicians. *See* note 2, *supra*. The court held it had jurisdiction over a private cause of action against physicians under the EMTALA.

The court's reasoning in *Sorrells* was expressly rejected by the Eighth Circuit in *King*, as well as by every court that has considered this issue since *Sorrells*. *See Ejberhardt v. City of Los Angeles*, 62 F.3d 1253 (9th Cir. 1995) (holding individuals are

9

barred from pursuing civil actions for damages against physicians under the EMTALA, and noting *Sorrells* is the "only case that has adopted a contrary view"); *see also King*, 16 F.3d at 271. In *Baber v. Hospital Corporation of America*, 977 F.2d 872 (4th Cir. 1992), the court refused to follow the holding in *Sorrells*, holding, "Unlike the *Sorrells* court, we refuse to second-guess Congressional intent." *Baber*, 977 F.2d at 878.

Like the majority of courts that have considered the issue, this court finds the EMTALA does not provide a cause of action for damages against an individual physician. Accordingly, Dr. Steele's motion to dismiss the plaintiffs' claim against him for damages under the EMTALA is hereby **granted** pursuant to Federal Rule of Civil Procedure 12(b)(6), because the plaintiffs' claim fails to state a claim upon which relief can be granted.

### 2. *Claim for civil penalties under the EMTALA*

Dr. Steele also argues the plaintiffs' EMTALA civil penalty claim against him should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted. He argues that civil penalties under the EMTALA are to be imposed by the Department of Health and Human Services, and are not available to private parties, citing *Baber*, 977 F.2d at 877-78. The plaintiffs have offered no authority to the court in support of this claim, and the court can find none.

In *Baber*, the court held, "Administrative sanctions are penalties imposed by and paid to the Department of Health and Human Services; they are not available to private parties." *Id.*, 977 F.2d at 877-78. Every other case located by the court that has addressed this question agrees. *See Taylor v. Dallas County Hospital Dist.*, 976 F. Supp. 437, 438 (N.D. Tex. 1996); *Lane v. Calhoun-Liberty County Hospital Ass'n, Inc.*, 846 F. Supp. 1543, 1552 (N.D. Fla. 1994); *Holcomb v. Monahan*, 807 F. Supp. 1526, 1530

(M.D. Ala. 1992); *Deberry v. Sherman Hospital Ass'n*, 775 F. Supp. 1159, 1162 (N.D. Ill. 1991). As the court held in *Lane v. Calhoun-Liberty County Hospital Association*:

> The EMTALA calls for both public and private enforcement of its provisions. Under § 1395dd(d)(1), the Secretary of Health and Human Services may seek civil monetary penalties against hospitals and physicians who violate the dictates of the EMTALA. 42 U.S.C.A. §§ 1395dd(d)(1), (3) and 1320a-7a(a) (West 1993); *Richardson v. Southwest Mississippi Regional Medical Center*, 794 F. Supp. 198, 200 (S.D. Miss. 1992). Notwithstanding this administrative enforcement of the EMTALA, the statute also creates a cause of action for private parties injured due to a violation of the EMTALA. More precisely, § 1395dd(d)(2)(A) states:
>> Any individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, an[d] such equitable relief as is appropriate.
>
> 42 U.S.C.A. § 1395dd(d)(2)(A). Plaintiff reads this provision together with the rest of the statute as providing a private cause of action against individual physicians as well as hospitals.
>
> Plaintiff's interpretation, however, is not born[e] out in the plain language of the EMTALA. Although the EMTALA makes both hospitals and physicians liable for civil penalties, the private remedy is limited to claims against "the participating hospital." *See id.* at § 1395dd(d)(1), (2). The EMTALA's enforcement provisions make no mention of a private plaintiff's right to sue individual physicians. *See id.* Instead, the EMTALA expressly creates a private cause of action only against offending hospitals. *See id.*
>
> At the same time, the Court is unwilling to conclude the EMTALA contains an implied cause of action for private parties against individual physicians. Here, it is notable that while Congress expressly created a private cause of action against hospitals, it did not include an analogous remedy

> against individual physicians. As the United States Supreme Court has stated:
>> . . . it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode."
>
> *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19-20, 100 S. Ct. 242, 247, 62 L. Ed. 2d 146, 154-55 (1979) (citations omitted). Reviewing Congressional acts creating private rights of action, the Court in Lewis further noted:
>> Obviously, then, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.
>
> *Lewis*, 444 U.S. at 21, 100 S. Ct. at 248 (citations omitted). In the EMTALA, Congress created a private cause of action against hospitals, but not individual physicians. If Congress had intended to create a private remedy against physicians, it knew how to do so. Here, Congress chose not to create such a remedy, and this convinces the Court the EMTALA does not allow private plaintiffs to sue individual physicians. *Richardson*, 794 F. Supp. at 201.

*Lane*, 846 F. Supp. at 1547-48.

The court finds the EMTALA does not provide a cause of action for civil money penalties against individual physicians. Accordingly, Dr. Steele's motion to dismiss the plaintiffs' claim against him for civil money penalties under the EMTALA is hereby **granted** pursuant to Federal Rule of Civil Procedure 12(b)(6), because the plaintiffs' claim fails to state a claim upon which relief can be granted.

In addition, the court finds the EMTALA does not provide a private cause of action for a civil monetary penalty against the Hospital. As the *Baber* court noted, this type of administrative sanction is imposed by and payable to the Department of Health and Human Services, and is not available as a private cause of action by an individual. Therefore, the

court *sua sponte* dismisses the plaintiff's claim against the Hospital for a civil monetary penalty.

### B. *Supplemental Jurisdiction*

Dr. Steele also argues the plaintiffs' state law claims (Counts I and III of the Complaint) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, or alternatively, in the exercise of the court's discretion under 28 U.S.C. § 1367(c). These claims are before this court because of its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

Subsection 1367(a) provides, in material part, as follows:

> Except as provided in [subsection (c)], in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Section 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Previously in this order, the court dismissed the plaintiffs' EMTALA claims against Dr. Steele and ruled that the plaintiffs cannot pursue their EMTALA civil money penalty

claim against either Dr. Steele or the Hospital. Thus, the only remaining viable claims in the lawsuit are the state law claims against both Dr. Steele and the Hospital in Counts I and III of the complaint, and the EMTALA claim against the Hospital for damages for "personal harm" pursuant to 42 U.S.C. § 1395dd(d)(2)(A). Federal court jurisdiction pursuant to 28 U.S.C. § 1331 exists only for this last claim,[4] unless supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) is properly invoked for the state law claims.

Chief Judge Mark W. Bennett of this district has summarized the general law regarding the court's supplemental jurisdiction as follows:

> Whether a court has supplemental jurisdiction is determined by the following test: "'a federal court has jurisdiction over an entire action, including state-law claims, wherever the federal-law and state law claims in the case "derive from a common nucleus of operative fact" and are "such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding."'" *Kansas Public Employees Retirement Sys. v. Reimer & Koger, Assoc., Inc.*, 77 F.3d 1063, 1067 (8th Cir. 1996) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), in turn quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26, 86 S. Ct. 1130, 1138-39, 16 L. Ed. 2d 218 (1966)); see *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 973 (8th Cir. 1999) ("A district court may exercise supplemental jurisdiction over state law claims that arise from the same nucleus of operative fact as the plaintiff's federal claims and when the plaintiff would ordinarily be expected to try all the claims in one judicial proceeding.") (citing *Kansas Public Employees Retirement Sys.*); *Meyers v. Trinity Med. Ctr.*, 983 F.2d 905, 907 (8th Cir. 1993); *Alumax Mill Prods., Inc. v. Congress Fin. Corp.*, 912 F.2d 996, 1005 (8th Cir. 1990); *Appelbaum v. Ceres Land Co.*, 687 F.2d 261, 262-63 (8th Cir.

---

[4]See *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1563 (11th Cir. 1994) (holding the EMTALA creates a right of action founded in federal law sufficient to create federal question jurisdiction pursuant to 28 U.S.C. § 1331 ); *see also Lane v. Calhoun-Liberty County Hospital Ass'n, Inc.*, 846 F. Supp. 1543, 1546 (N.D. Fla. 1994).

> 1982); *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.*, 578 F.2d 727, 734-35 (8th Cir. 1978). In sum, supplemental jurisdiction under subsection (a), is appropriate where the federal-law claims and the state-law claims in the case "derive from a common nucleus of operative fact" and are such that a plaintiff would ordinarily be expected to bring all of the claims in one suit. *See Kansas Public Employees Retirement Sys.*, 77 F.3d at 1067.
>
> Once the court has determined supplemental jurisdiction is proper under subsection (a), subsection (c) provides the list of circumstances under which the court can decline to exercise such supplemental jurisdiction[.]

*Schuster v. Anderson*, 378 F. Supp. 2d 1070, 1115 (N.D. Iowa 2005).

The threshold determination here is whether the state law claims in Counts I and III arise out of the same "nucleus of operative facts as the plaintiff[s'] federal claim[]." *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 973 (8th Cir. 1999). Dr. Steele concedes that they do. Nevertheless, he argues the plaintiffs' remaining EMTALA claim is not "substantial enough to support the court's exercise of supplemental jurisdiction." Doc. No 8-2, p. 4.

Dr. Steel points out that to succeed on a section 1395dd(b) failure to stabilize claim, the patient must prove "that (1) the patient had an emergency medical condition, (2) the hospital knew of the condition, (3) the patient was not stabilized before being transferred, and (4) the hospital neither obtained the patient's consent to transfer nor completed a certificate indicating the transfer would be beneficial to the patient and was appropriate." Doc. No. 8-2, p. 4 (citing *Brodersen v. Sioux Valley Memorial Hosp.*, 902 F. Supp. 931, 943 (N.D. Iowa 1995)). He argues the allegation in paragraph 25 of the Complaint[5] that

---

[5] In paragraph 25 of their Complaint, the plaintiffs allege: "Laura A. Heimlicher had an 'emergency medical condition' as defined in 42 U.S.C. § 1395dd(e)(1). Dr. Steele, individually and as an agent of [the Hospital], was aware of Laura Heimlicher's emergency medical condition. Other employees and agents
(continued…)

15

a "consent for transfer" form was executed means the plaintiffs cannot establish the final requirement of such a claim. *Id.*, pp. 4-5. The plaintiffs responds that they intend to prove the "consent to transfer" form was defective. *See* Doc. No. 9, p. 13.

At this stage of the proceedings, the court is unable to determine the facts surrounding the "consent to transfer" form, or even the contents of the form. The court will not grant a motion to dismiss on this basis. As Chief Judge Bennett has advised:

> In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged by the complaining party are true, and must liberally construe those allegations. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) ("When analyzing a 12(b)(6) dismissal, we accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff."); *Midwestern Mach., Inc. v. Northwest Airlines, Inc.*, 167 F.3d 439, 441 (8th Cir. 1999) ("When ruling on a motion to dismiss, courts are required to accept the complaint's factual allegations as true and to construe them in the light most favorable to the plaintiff."); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) ("In reviewing a motion to dismiss for failure to state a claim, we view the facts in the light most favorable to the claimant, taking the facts as found in the complaint as true")

---

[5](…continued)
of [the Hospital] were aware of Laura Heimlicher's emergency medical condition. This awareness is documented in the 'Consent for Transfer' form signed by Dr. Steele and Jennifer Helle." Doc. No. 2, ¶ 25.

> (citing *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir. 1998)); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997) ("In considering a motion to dismiss, we assume all facts alleged in the complaint are true, construe the complaint liberally in the light most favorable to the plaintiff, and affirm the dismissal only if 'it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief.'") (quoting *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994)); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) ("In considering a motion to dismiss, the court must construe the complaint liberally and assume all factual allegations to be true.").

*Dible v. Scholl*, 410 F. Supp. 2d 807, 810 (N.D. Iowa 2006).

Dr. Steele alternatively argues the court should exercise its discretion to decline supplemental jurisdiction under one or more of the exception provided by section 1367(c). Specifically, he argues the following exceptions apply: (1) the state law claims raise novel or complex issues of State law, (2) the state law claims substantially predominate over the claim over which the district court has original jurisdiction, and (3) "there is a very real possibility" that the district court may dismiss all claims over which it has original jurisdiction. Doc. No. 8-2, pp 5-6.

The court finds the state law claims will not likely raise any novel or complex issues of state law, and they are not likely to predominate over the federal claim remaining in this case. Although the court cannot predict whether the Hospital will present the court with grounds to dismiss the plaintiffs' claim for damages against it under the EMTALA, based on the present state of the record, that claim remains in the case.

Accordingly, the motion to dismiss the state law claims against Dr. Steele for want of supplemental jurisdiction is **denied**.

## III.  CONCLUSION

The court **grants in part and denies in part** the motion to dismiss (Doc. No. 8) filed by Dr. Steele.  The motion is granted with respect to the plaintiffs' claims against Dr. Steele under the EMTALA.  The motion is denied with respect to the plaintiffs' state law claims against Dr. Steele.

In addition, the court *sua sponte* dismisses the plaintiffs' claim for a civil monetary penalty against the hospital under the EMTALA.

The court has jurisdiction over the plaintiffs' claim against the Hospital for damages under the EMTALA, and the court retains supplemental jurisdiction over the state law claims.

**IT IS SO ORDERED.**

**DATED** this 3rd day of July, 2006.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT